GEORGE MARTIN and CLARISSA MARTIN *vs.* REBECCA R. WAGENER, impleaded &c.

Whether, in the case of a voluntary partition, between tenants in common of lands, which has been consummated by conveyances to each, of his share, in severalty, when no question is raised in regard to the fairness and equity of the partition, a court of equity has not power to compel a creditor having a lien on an undivided interest, by judgment or mortgage, before such partition, to resort to the share so partitioned to his creditor, for the satisfaction of his lien, and restrain him from enforcing such lien against the shares so partitioned and conveyed to the other tenants? *Quære.*

Where several agreements and conveyances between the heirs of a person dying seised of land, were not in the nature of a partition of the estate, and were not intended to be a partition, but were mere contracts of bargain and sale, and conveyances thereon, and the plaintiffs conveyed their interests in the common lands to R. M., and thus subjected them to the lien of a judgment existing against him, in exchange for a conveyance of an interest in other lands also incumbered by the same judgment; it was *held* that the plaintiffs having done so voluntarily, and without any mistake, or ignorance as to the facts, the court, upon a complaint alleging that R. M. had disposed of all the property he received in and by said exchange, which was amply sufficient to satisfy the judgment, and that he was insolvent and unable to restore the same, or procure restitution thereof, could not relieve them from the consequences of their own act, by decreeing the lands conveyed to them by R. M. to be free from the lien of such judgment, and restraining the sale thereof upon execution issued on such judgment.

*Held, also,* that, other judgments against R. M. having been enforced, and his title to the lands which were conveyed to him by the plaintiffs, and all the other lands held by him in severalty, having been alienated in executing the judgments, and the title vested in different purchasers, it became a mere question as to the order in which the lands subject to the lien of the original judgment should be sold, or made liable to contribution to such judgment; and that the order was regulated by statute. (2 *R. S.* 875, §§ 70, 71.)

THIS was an appeal by the plaintiffs, from a judgment entered on the decision and report of a referee, dismissing the plaintiffs' complaint. The action was to determine the equitable rights of the parties in certain lands, which were subject to the lien and operation of a judgment recovered against Russell Martin. The plaintiffs, by their complaint, demanded a decision declaring the judgment in question to be a lien on certain of such lands, and de-

Martin *v.* Wagener.

claring that the other lands were free from the lien of the judgment. The plaintiffs also demanded a judgment awarding a perpetual injunction against selling the lands claimed by them to be exempt from the lien of the judgment. The judgment in question was recovered by Joseph W. Upham, on the 17th day of May, 1866, against Russell Martin and Alfred Tallent, which was so docketed as to become a lien on the premises in question, which are all situated in Cattaraugus county. The plaintiffs, in their complaint, claimed that the judgment was a lien on lots 4, 5, 6, 8 and 10, in section 7, township 1, and range 4, and lots 17, 19, 20, 21 and 22, in block 85, in the village of Olean. The residue of the lands described in the complaint, the plaintiffs claimed were not subject to the lien and operation of the judgment. The lots numbered 4, 5, 6, 8 and 10, contain 597 acres of land, and belonged to Frederick S. Martin, who died on the 28th day of June, 1865, intestate, leaving Russell Martin and six others his heirs at law. Russell Martin owned one equal undivided seventh of these lots when the judgment in question was recovered. The plaintiffs are two of the heirs of Frederick S. Martin. On the 31st day of August, 1866, Russell Martin entered into a written agreement, bearing date on that day, with the plaintiff, George Martin, by which he agreed to convey to the plaintiffs his interest in the real and personal property coming to him from his father, and in consideration thereof, George Martin was to procure a conveyance to Russell Martin and Stanley Martin, of 594 acres of land, lying south of the Allegany river, in the town of Olean, being the lots numbered 4, 5, 6, 8 and 10. The conveyances were made pursuant to this contract, except that one of the heirs, Henry Martin, declined to join in the conveyance to Russell of his individual interest. Russell Martin afterwards parted with his interest in most of the land, thus acquired by him, in the following order: 1. On the 6th day of June, 1866, he conveyed to Joseph

Martin v. Wagener.

R. Jewell lots 1 to 25 inclusive, being in block No. 84, in the village of Olean. On the 7th day of July, 1866, Jewell conveyed a life estate in these lots to Lydia Martin, the wife of Russell Martin, with remainder to his children. The plaintiffs had no interest in these lots. 2. On the 18th day of June, 1866, the Chautauqua County Bank recovered a judgment against Russell Martin, and his interest in lots Nos. 4, 5, 6, 8 and 10, above mentioned, was sold, and bid in by the bank. The sheriff's certificate was assigned to Joseph H. Clark, who, on the 6th day of May, 1868, received a deed from the sheriff. The plaintiffs had no interest in these lots. 3. On the 18th day of October, 1866, Russell Martin, in connection with his brother, Stanley Martin, under and pursuant to the contract, bearing date the 31st day of August, 1866, conveyed to the plaintiffs his interest in all of the real property, inherited by him from his father, saving the land lying on the south side of the Allegany river, in the town of Olean. The plaintiffs and other heirs conveyed to Russell and Stanley their interest in the above excepted premises, at the same time. 4. On the 13th day of June, 1867, the First National Bank of Titusville recovered a judgment against Russell Martin. The sheriff, on the 2d day of November, 1867, sold lots numbered 17, 19, 20, 21 and 22, in block 85, in the village of Olean, under this judgment, to Charles S. Cary, who assigned the sheriff's certificate to the defendant Truman R. Coleman, to whom the sheriff deeded the lots on the 8th day of February, 1869. The plaintiffs had no interest in this land. 5. For aught that appeared, Russell Martin had an interest in lot 18, block 85, subject to the lien of the judgment in question. The plaintiffs did not claim any interest in this lot, by their complaint. 6. Russell Martin held the legal title to one-third of the one undivided seventh conveyed by Olean Smith to Russell, George, and Clarissa Martin. The judgment recovered by Upham against Russell Martin was

assigned to Josephus H. Clark, and by him assigned to the defendant Rebecca R. Wagener, who, in consideration thereof, agreed with Clark not to permit lots numbered 4, 5, 6, 8 and 10, in the town of Olean, to be sold on the judgment. The defendant Rebecca R. Wagener directed the sheriff of Cattaraugus county to advertise and sell, on the execution issued and delivered to him, on the judgment in question, all of the land excepting the lots above designated as lots Nos. 4, 5, 6, 8 and 10. The sheriff advertised accordingly. This action was commenced to restrain the sheriff's sale.

The complaint, among other things, alleged the above facts; also that the interest of Russell Martin, in the estate of his father, and in said lands, did not exceed in value the sum of $12,000; that the property conveyed and transferred to him in consideration thereof, and in exchange therefor, greatly exceeded that sum in value; that said Russell had, since the date of the contract and conveyance, disposed of all the property he received in and by said exchange, and was insolvent, and utterly unable to restore the same or procure restitution thereof, or of any part of it; but that said judgment, upon the execution of said conveyance, became a lien and charge upon an undivided three-sevenths of the land conveyed to him by the plaintiffs, that being the measure of the interest acquired by said Russell, and had ever since remained, and now is, a lien and charge thereon, and was superior to every and any other incumbrance thereon; and that the said three-sevenths was of the value of $5000, and amply sufficient to satisfy said judgment, and all the costs and expenses of enforcing the collection thereof. The prayer of the complaint was, that the said Upham judgment might be adjudged to be a lien, charge and incumbrance upon none of the lands, except said lots 4, 5, 6, 8, 10, 17, 19, 21 and 22, and that all the others of said lands and premises be adjudged free, clear and

exempt from said judgment, and the lien, effect or operation thereof; that the defendant Rebecca R. Wagener, her assigns, agents, servants and attorneys, be forever enjoined and restrained from causing or permitting any of said lands or premises to be sold on said judgment, or by virtue thereof, or of any execution already issued or hereafter to be issued thereon, except the lots last above named and described, and from enforcing or endeavoring to enforce said judgment against any of said lands and premises except said last named lots; and for general relief.

The referee found and decided, as conclusions of law, from the foregoing facts : 1. That the equitable title and interest of Russell Martin to the lands conveyed by Olean Smith to him and. the plaintiffs, was transferred to the plaintiffs before the said conveyance, and that said Russell Martin acquired no title by the said conveyance, which was subject to the lien of said judgment. 2. That the interests of Russell Martin, except the legal title conveyed by Olean Smith by her deed of June 1, 1867, and the lands described in the complaint, were liable to contribute to the satisfaction of the said judgment in favor of Joseph W. Upham against Russell Martin, in succession in the. following order : (1.) The lands described as all that certain piece or parcel of land of lot 18 in block 85 in the village of Olean, Cattaraugus county, of the T. J. Gosseline survey, situated in the northwest corner of said lot 18. (2.) The lands conveyed by the sheriff of Cattaraugus county to Truman R. Coleman, pursuant to sale upon the judgment in favor of the First National Bank of Titusville, against Russell Martin, docketed June 13th, 1867. (3.) The lands conveyed by Russell and Stanley Martin to the plaintiffs, October 18, 1866. (4.) The lands described as lots 4, 5, 6, 8 and 10, south of Allegany river, conveyed by the sheriff of Cattaraugus county, pursuant to sale upon. judgment of Chautauqua National Bank against Russell

Martin, docketed June, 18, 1866. (5.) The lands conveyed by Russell Martin to Joseph R. Jewell, June 6, 1866. 3. The referee found and decided, that all the interest which Russell Martin had in the lands of the plaintiffs, at or subsequent to the docketing of the said Upham judgment, except the title conveyed to him by Olean Smith, was subject to the lien of said judgment, and liable to be sold upon execution thereon, before resorting to the lands conveyed by the sheriff of Cattaraugus county to said Josephus H. Clark, or to the lands conveyed by Russell Martin to Joseph R. Jewell. 4. That the plaintiffs had no such interest in said lands conveyed by Russell Martin to said Jewell, or in the relief prayed for in respect to such lands, as entitled them to maintain this action. 5. That the defendant Rebecca R. Wagener was entitled to judgment that the complaint be dismissed, with costs, to be recovered by her of the plaintiffs.

Judgment was entered accordingly.

*D. H. Bolles*, for the appellants.

*First.* The ultimate determination of the referee, and the judgment for which he provided in his report, are wholly inconsistent with, and absolutely unsustained by, his preliminary conclusions of law, in several important particulars.

I. He expressly decided that the interest of Russell Martin in the village lots 17, 18, 19, 20, 21 and 22, block 85, was primarily chargeable with the Upham judgment, and was liable to be sold thereon, before the interest acquired by the appellants from Russell Martin was resorted to, and yet he withheld from the plaintiff all relief predicable upon that decision, and awarded to the defendant Wagener, who owned and was seeking to enforce that judgment, a simple and absolute judgment of dismissal of the complaint. If this preliminary decision was sound, as it unquestionably was, the plaintiffs were entitled to a

Martin *v.* Wagener.

judgment containing a provision to that effect. Such relief was not only consistent with the case made by the complaint, and embraced within the issue, but was practically, though perhaps not in express terms, demanded in the complaint itself, and should have been accorded by the referee. (*Code*, § 275. *Marquat* v. *Marquat*, 2 *Kern.* 336. *Beach* v. *Cooke*, 28 *N. Y.* 508.).

II. But the error of the referee as to another aspect of the case is still more singular and important. He expressly decides, as an abstract proposition, that the interest in Olean Smith's original seventh of the property, acquired by the appellants from Russell Martin, was absolutely exempt from liability on the Upham judgment. In this he was undoubtedly right, for although Russell Martin held the nominal legal title to a third of that seventh, he had, long before that title accrued to him, divested himself of all equitable interest, in favor of the appellants; and it is well settled that such a title does not subject the land to the charge of a judgment. (*Ells* v. *Tousley*, 1 *Paige*, 280. *Towsley* v. *McDonald*, 32 *Barb.* 604. *Moyer* v. *Hinman*, 3 *Kern.* 180. *Tisdale* v. *Jones*, 38 *Barb.* 523. *Siemon* v. *Schurck*, 29 *N. Y.* 598.) If the price paid for Mrs. Smith's seventh is any test of the value of the interest thus decided to be exempt, the report determines in effect, as an abstract proposition, that an interest of the value of $4000, belonging to the appellants, which is nominally subject to the judgment the defendant Wagener is seeking to enforce against it, is actually entitled to be exonerated from it, and yet by withholding any relief based upon that proposition, practically decides that she is entitled to sell this identical exempt interest upon her judgment. And this, too, when the very relief the appellants demand in their complaint consists in vindicating this interest with others, from the lien and charge of that judgment.

*Second.* As between the lands south of the Allegany river, the title to which was held by Clark, and the inter-

est acquired by the appellants under their deed from Russell Martin, the former were chargeable primarily with the payment of the Upham judgment, although the judgment under which Clark acquired his title was recovered prior to Russell Martin's conveyance to the appellants.

I. The ordinary rule, as to the grades of liability of lands incumbered by mortgage or judgment, is that they are chargeable in the inverse order of alienation. (*Stuyvesant* v. *Hall*, 2 *Barb. Ch.* 151. *Clowes* v. *Dickenson*, 5 *John. Ch.* 235. 9 *Cowen*, 402. *Crafts* v. *Aspinwall*, 2 *Com.* 289.) The absolute alienation by deed does not, however, always determine the question of time. If the deed is executed in pursuance of a preliminary contract, the date of the contract determines that question. (*James* v. *Hubbard*, 1 *Paige*, 228. *Crafts* v. *Aspinwall*, 2 *Com.* 289.) If the alienation accrues from a judicial sale, the time the judgment under which the sale took place became a lien, will control. (*Woods* v. *Spalding*, 45 *Barb.* 602. *Stuyvesant* v. *Hall*, *supra.*) But time is by no means the exclusive test, and only applies where the equities are otherwise equal. (*Patty* v. *Pease*, 8 *Paige*, 277. *Woods* v. *Spalding*, *supra*, p. 608.) It is not at all uncommon, and certainly not inequitable, where special reasons exist in particular cases, to modify the rule as to time, and to charge the incumbrance upon the lands first alienated. Whenever the original incumbrance debtor on the one hand, and a successor in interest in part of his realty, on the other, either by apt agreement or by act or implication, have charged that part of the realty with the incumbrance, or the imperative equities of the case require it to be so charged, the test of time is destroyed. (*Marsh* v. *Pike*, 10 *Paige*, 595. *Ferris* v. *Crawford*, 2 *Denio*, 595. *Russell* v. *Pistor*, 3 *Seld.* 171.)

II. The equities of the appellants are in their intrinsic character superior to those of the defendant Clark. 1. They had no notice of either judgment at the time they

Martin *v.* Wagener.

purchased from Russell Martin. No deduction or allowance was made by the parties on account of these judgments. The contract of August 31st, 1866, contemplated and expressed that Russell Martin should convey to the plaintiffs the interests he acquired by and after the death of his father in all the lands except those south of the river, in the precise condition in which that interest accrued to him. His deed of October 18th, 1866, in pursuance of that contract, purported to convey that interest in the condition in which it accrued to him. This was tantamount, in every essential, so far as this question is concerned, to a covenant of warranty on his part. (*Wood* v. *Spalding, supra,* 608. 2 *Lead. Cases in Equity, p.* 244, 3*d Am. ed.*) 2. The transaction between Russell Martin and the appellants, on the 3d day of August, 1866, consummated on the 18th of October of the same year, was tantamount, in legal effect, to an appropriation on his part of the lands south of the river to the payment of both judgments, and the conveyance to him by the appellants of an additional estate in these lands for that purpose. When Clark took his deed he took it charged with that burden and subject to all the equities existing against these lands; for although the bank judgment was recovered prior to the transfer, it gave rise to no equity before it became a lien, and the equity of the appellants was prior in time, and superior in character. (*Matter of Howe,* 1 *Paige,* 124. *Buchan* v. *Sumner,* 2 *Barb. Ch.* 165. *White* v. *Carpenter,* 2 *Paige,* 217. *Keirsted* v. *Avery,* 4 *id.* 9.) 3. The transaction between the appellants and Russell Martin was tantamount to a voluntary partition of the estate of their father. Such a partition is recognized by the courts as valid and binding, and should have the same effect, as to a judgment against him, that a partition by action should have under the provisions of the statute. (3 *R. S.* § 9, *tit.* 3, *ch.* 5, *part* 3.) The case of *Wotten* v. *Copeland,* (7 *John. Ch.* 141,) cited by the referee in his opinion on this point,

does not militate against this position, or indeed touch it in any point. The incumbrances upon the property in that case were against the common ancestor, not as in this case against one of the co-tenants. It was not a case of voluntary partition. The case arose, and was decided, before the adoption of the Revised Statutes. The interest seems to have been less than the fee, and although the court awarded a partition, it is decided that the law, at that time, did not sanction a judicial sale of that species of common property, and a distribution of the proceeds of the sale among the incumbrances and co-tenants, as was prayed for in that case.

III. In addition to those already adverted to, there are other special circumstances in the case, imparting cumulative energy to the appellants' equity. 1. The interest, original and acquired, of Russell Martin in the land south of the river, is ample in value to satisfy both judgments, and was made so by the property the appellants parted with as a consideration for the interest they acquired from him. 2. If the appellants' interest is to be sacrificed for the benefit of Clark, they have no redress whatever; Russell Martin's insolvency has precluded them from the possibility of reimbursement. In a case like this, the insolvency of the judgment debtor is the recognized basis of an appeal to the consideration of the court. (*Wright* v. *Austin*, 56 *Barb.* 13. *Skeel* v. *Spraker*, 8 *Paige*, 194.) Clark, however, can lose nothing which he is equitably entitled to, by the enforcement of the Upham judgment against the lands south of the river, for the value of those lands is the best possible indemnity to him.

IV. The equities of the appellants are not affected by the fact that the judgment in favor of the Chautauqua County National Bank, under which Clark acquired title to the lands south of the river, was rendered prior to the conveyance from Russell Martin to them. Clark took no

Martin *v.* Wagener.

greater equity by ˙ˢ purchase than that which the bank itself had.

V. The pro˥            ˥evised Statutes, (§§ 70 *to* 74, *art. 3, title 5, c*˛.            ˛ted by the referee in his opinion, have no ef˟            ˟ver upon the question in this case, against the appellants.   1. Those provisions only apply to the case of equities affected by an execution sale that has already taken place, and have no necessary bearing upon questions involved in an action like this, anticipating and providing against a sale.   2. The sole object of the provisions, as clearly appears from the context, and as stated by the revisers, is to give a party, whose property has been sold against his equity, a right to use the judgment, under which the sale took place, for his own indemnity and reimbursement, and for that purpose to prevent its satisfaction.   The revisers indeed expressly state, that the statute is not designed to supersede, but to conform to the rules as to priority of right embodied in the unwritten law of the State.   So also says the court in the only case in which these provisions are referred to, (*James* v. *Hubbard*, 1 *Paige*, 228.)   3. The statute itself comprehensively and expressly recognizes the unwritten law as the rule of construction, and is far from imperatively embodying the theory that time is the test of priority.   Section 70 enacts that when the whole of a judgment " *or more than a due proportion thereof*, shall be levied upon the lands" of a party, he may compel a contribution from other lands. The words italicised, taken in connection with the context, clearly imply that the lands of such party may, for some special reason, be liable primarily upon the common incumbrance, even as against subsequent grants or incumbrances.   4. That the statute does not exclude the modification of the time rule by the interposition of other equities, will appear from another consideration.   If a judgment debtor, owning several parcels of realty, should alienate one parcel under a deed containing the express provision

that the grantee should pay the judgment, and should afterwards convey the other parcels to different purchasers, can it be contended that the statute would confer upon the first grantee the right to levy contribution against the other purchasers, or prevent them from insisting that his parcel should be first resorted to under the judgment. Again; can it be claimed, as the true construction of the statute, when it uses the term "conveyance," that the rights of a party, who purchases by contract and afterwards takes a deed, are governed by the date of the deed itself, and not by the date of the contract.

*Third.* If the second proposition is sound, it follows, as an inevitable deduction, that the interest acquired by the appellants from Russell Martin, have by the act of the respondent, Mrs. Wagener, been exempted from liability on the Upham judgment, and she has precluded herself from enforcing it against that interest.

I. The appellants, by their transaction with Russell Martin, became, in equity, his sureties in relation to this judgment, and were entitled to vindicate their equitable right as such, by an action instituted for that purpose in advance of a sale under the judgment, or, in the event of a sale of their interest under it, to be subrogated to it, as a means of reimbursement out of the land south of the river. (*Eddy* v. *Traver*, 6 *Paige*, 521. *Marsh* v. *Pike*, 10 *id.* 595. *Clowes* v. *Dickinson*, 9 *Conn.* 402. *Hayes* v. *Ward*, 4 *John. Ch.* 122. *Ferris* v. *Crawford*, 2 *Denio*, 595. *Vartie* v. *Underwood*, 18 *Barb.* 561. *Tisdale* v. *Jones*, 38 *id.* 523.)

II. The value of the interest of Russell Martin, in the land south of the river, acquired from the appellants, was, as found by the referee, amply sufficient to satisfy this judgment, and was the only means of indemnity and reimbursement available to the appellants.

III. If, as the referee has decided, and is probably the fact, the contract executed by Mrs. Wagener to the defendant Clark, at the time she took the assignment of the

Martin *v.* Wagener.

judgment, was binding upon her, and consequently upon whomsoever should succeed her under it, whether by subrogation or otherwise, it operated as an utter destruction of the judgment as a means of security or reimbursement to the appellants, and therefore, within well established and unexceptionable rules of law, precludes her from resorting to the property of the appellants. (3 *Kent's Com.* 124, *marg. Guion* v. *Knapp,* 6 *Paige,* 35. *Stuyvesant* v. *Hall, supra. James* v. *Hubbard, supra. Pitts* v. *Congdon,* 2 *Comst.* 352.)

IV. It is a matter of no importance that Mrs. Wagener executed this contract without actual notice of the appellants' equities. 1. Notice is never exacted where it is intrinsically impossible to be given. The appellants had no available means of affecting her with actual notice, for they could not anticipate that she contemplated purchasing the judgment, or that if she did purchase it, she would be required to, or would, enter into such a contract. They had no more reason to suppose she designed to buy it, than that any other citizen of the United States would do so. 2. As all the contracts and conveyances that evidenced their equities, were on record at the time she entered into the contract, she was affected by constructive notice, the only notice, indeed, that could be given to any purchaser of the judgment. 3. Her position did not, in any view of the case, entitle her to notice, or call for the exercise of any diligence on the part of the appellants to give her notice, even if any degree of diligence in that direction would have resulted in giving it. She was in no sense within the rule which exempts the owner of the incumbrance, who, in good faith and without notice of an equity subsequent to his incumbrance, releases a part of the incumbered property to the prejudice of that equity, from responsibility to the person in whose favor the equity exists. The reason of the distinction between the two cases is obvious. In the one case the owner of the equity knows, or is bound to know, and can always ascertain, who and

where the owner of the incumbrance is, and has the power to affect him with notice. Not so, however, with the purchaser of an incumbrance. No amount of diligence can identify him in advance of his purchase. It is only after the fact is accomplished that he is ascertainable. 4. The purchase by Mrs. Wagener of the Upham judgment was the purchase simply of a chose in action, and she took the assignment of it burdened with all the equities pertaining to it in favor of the appellants, whether she had notice of those equities or not. (*Ely* v. *McNight*, 30 *How.* 97. *Westfall* v. *Jones*, 23 *Barb.* 9. *Mickles* v. *Townsend*, 18 *N. Y.* 575. *Bush* v. *Lathrop*, 22 *id.* 535, *and cases there cited.* *Hartley* v. *Tatham*, 1 *Keyes*, 222. *Blydenburgh* v. *Thayer*, 3 *id.* 293.)

*Fourth.* If the contract of Mrs. Wagener did not have the effect of exonerating the appellants' property from the judgment, it was void as to the appellants, as being an apparent obstruction to the vindication of their rights; and they are entitled to judgment, postponing a sale of their interest to that of the land south of the river, under the judgment, there is no principle of equity that would prevent the court from declaring it void. 1. It was a fraud upon the appellants. 2. It was a fraud upon Mrs. Wagener, if she made the contract in good faith, and without notice, because its effect was, if carried out, to prevent her from enforcing a judgment, for which she paid value, against the only property liable upon it. 3. Clark had, or was bound from his situation to have, full knowledge of the condition and rights of all the parties in interest. He purchased the lands south of the river under the judgment in favor of the bank, and could not avoid understanding by what means the interest of Russell Martin, thus acquired by him, had been made three sevenths instead of one seventh. He had owned the Upham judgment ever since July 1867. All the elements of information were within his own hand, and that he had availed himself of them is proved by the fact, that he exacted the contract in question from

Martin *v.* Wagener.

Mrs. Wagener. The attempt thus made to exempt his own property from the burden properly resting upon it, at the expense of the appellants, is characterized by every index of bad faith. 4. The question in the case is substantially a question between the appellants and Clark. The contract, by which he sought to exempt his own interests, was a contract exacted by himself. It was substantially a contract executed by himself, and had no more effect as between him and the appellants, than any other act of his, not participated in by them, could have had. He certainly could not fortify himself by a contract, in contravention of the equities of the appellants, made by an utter stranger to those equities, without the appellants' sanction.

*Fifth.* The refusal of the referee to find as a fact, that the transaction between the appellants and Russell Martin took place, on the theory that the interest they acquired from him was, in contemplation of the parties, free and clear of incumbrance against him, was erroneous. The evidence on that subject is supplied by the papers executed between them, is in no way contradicted, and is decisive in favor of the fact he refused to find.

*John Ganson,* for the respondent Rebecca R. Wagener.

I. The premises designated as lots numbers 1 to 25 inclusive, in block 84 in the village of Olean, were first conveyed by Russell Martin, after the recovery of the judgment in question. His wife has a life estate in these premises, and the remainder is in his children. The plaintiffs have not any interest in these lots, and cannot predicate any claim upon them. If there be nothing in the case to vary the ordinary rule, they would be the last to be sold, as they were the first conveyed by the judgment debtor after the recovery of the judgment. (2 *R. S.* 375, § 71.)

II. The lots next conveyed by the judgment debtor are those numbered 4, 5, 6, 8 and 10. These lots are owned by Joseph H. Clark. The defendant Rebecca R. Wagener

stipulated with him, in consideration of the assignment to her of the judgment in question, not to permit these lots to be sold on the execution then in the sheriff's hands, or upon any other execution to be issued on that judgment. 1. The plaintiffs had not any interest in these lots, and their interests were not affected by this stipulation in any other lands subject to the lien of the judgment against Russell Martin. 2. The only persons affected by the stipulation between Mr. Clark and Rebecca R. Wagener are those who owned lots 1 to 25, inclusive, which were first conveyed and the last to be sold. These lots could not be rightfully sold until the judgment creditor had sold lots 4, 5, 6, 8 and 10. So that the effect of the stipulation would be to release lots 1 to 25, inclusive.

III. The next conveyance by the judgment debtor, Russell Martin, was made in connection with his brother, Stanley Martin, to the plaintiffs, on the 18th day of October, 1866, pursuant to, and in performance of, an agreement entered into between them on the 31st of August, 1866. 1. This was a quit-claim deed. At the same time the deed was delivered, the plaintiffs and Clarissa Martin conveyed, with warranty, to the judgment debtor, Russell Martin, and to his brother Stanley, 597 acres of land. This is the same land as that embraced in the lots last above mentioned. 2. This land is on the south side of Allegany river, and belonged to Frederick S. Martin when he died. One equal undivided seventh of this land descended to Russell Martin, and was subject to the lien of the judgment in question when the conveyance to the plaintiffs was made. The plaintiffs, by their covenant of warranty, were bound to protect the grantees against the lien of the judgment in question. 3. The interest which the judgment debtor acquired by this conveyance in these premises became liable to the lien and operation of the judgment in question. 4. The plaintiffs, so far as that interest is concerned, have not any right to interfere; and

so far as the lien on the undivided one-seventh, which was vested in the judgment debtor before the conveyance of the plaintiffs, is concerned, the plaintiffs are not entitled to any protection. If they are liable to warrant against the lien on that interest, by reason of their covenant they must fulfill, as it was an obligation they voluntarily assumed for a good and sufficient consideration. If they are not bound by their covenant to protect their grantees against that lien, then they will in no manner be prejudiced by selling that portion of the premises. 5. The defendant Rebecca R. Wagener having stipulated with Mr. Clark not to suffer these lots to be sold, the plaintiffs cannot be otherwise than benefited by such stipulation, and they are not entitled to any relief in this action in that regard.

IV. The next conveyance was of lots 17, 19, 20, 21 and 22, in block 85, in the village of Olean, owned by the defendant Truman R. Coleman. The plaintiffs have not any interest in these lots, and cannot, therefore, complain.

V. The remaining land is an interest in lot 18, in block 85, still owned, for aught that appears, by Russell Martin. 1. This lot the plaintiffs have no interest in. It is clearly liable to be sold first under the judgment. 2. From the above statement it would seem that the sale to be made, should be in the order following: (1.) Sell the interest in lot 18, in block 85. (2.) Sell lots 17, 18, 19, 20, 21 and 22, owned by the defendant Truman R. Coleman. (3.) The land conveyed by Russell Martin, through a quit-claim deed to the plaintiffs, on the 18th day of October, 1866, pursuant to, and in performance of, the agreement entered into between them, on the 31st of August, 1866. 3. The plaintiffs have not any interest by which they can require any of the other lots to be sold in preference to the interest acquired under the above contract.

VI. There was no occasion for commencing this action. The complaint does not set forth, nor the proof show, any refusal on the part of the defendant Rebecca R. Wagener

to properly respect the rights of others, in the order of the sale to be made. 1. The plaintiffs never asked Rebecca R. Wagener to sell the land in any particular order, and there is no evidence showing that she intended to violate any rule of equity in making the sale. 2. The statute gives the plaintiffs all the remedy requisite and necessary to protect their rights. (2 R. S. 375, § 70.)

VII. The interest of Russell Martin, in the land conveyed by Olean Smith, was subject to the lien and operation of the Upham judgment.

By the Court, JOHNSON, J. I am not prepared to say, that in the case of a voluntary partition, between tenants in common of lands, which has been consummated by conveyances to each of his share in severalty, where no question is raised in regard to the fairness and equity of the partition, a court of equity has not power to compel a creditor having a lien on an undivided interest by judgment or mortgage before such partition, to resort to the share so partitioned to his creditor, for the satisfaction of his lien, and restrain him from enforcing such lien against the shares so partitioned and conveyed to the other tenants. I am not aware that such a question has ever arisen in our courts, for adjudication. Nor does it arise here. The appellants' counsel contends that the several agreements and conveyances between the heirs of Frederick S. Martin were tantamount to a voluntary partition of the estate between them. But it will be seen by an examination of the several contracts and conveyances, that they were in no respect in the nature of a partition, and were not intended to be a partition. They were mere contracts of bargain and sale, and conveyances thereon; the same, precisely, as such transactions are begun and carried out between separate owners of lands. It was the misfortune of the plaintiffs that they conveyed their interest in the common lands to Russell Martin, and thus subjected it to

Martin v. Wagener.

the lien of the judgments against him, and took from him an interest already incumbered. But they did it voluntarily, with their eyes open, and must, for aught I can see, abide by the consequences. There is no pretense that they acted under any mistake, or ignorance as to facts. The judgments against Russell Martin were all matters of record, and must, or should, have been known to the plaintiffs, at the time. What is here asked of the court, is, in effect, to relieve the plaintiffs from the consequences of their own voluntary and imprudent conduct. This is not the province of a court of equity.

The other judgments having been enforced, and the title of Russell Martin to the lands conveyed to him by the plaintiffs, and all the other lands held by him in severalty, having been alienated in executing the judgments, and the title vested in the hands of different purchasers, it becomes, as the referee held, a mere question as to the order in which the lands subject to the lien of the judgment in question should be sold, or made liable to contribution to the judgment in question. This is regulated by statute. (2 R. 375, §§ 70, 71.)

All the lands of Russell Martin, the judgment debtor, upon which the judgment in question ever attached as a lien, are now in other and several hands. There is no complaint, or pretense, that the defendant is attempting to violate the rule prescribed by statute for contribution by lands alienated, or to prevent its operation. On the contrary, the complaint is, that the defendant has levied upon and advertised for sale those lands, only, which the statute makes liable to contribute in the first, second and third order. It is of no consequence whatever that the defendant, when she took her assignment of the judgment in question, agreed not to enforce it against the lands held by her assignor under the sale by the Chautauqua County Bank, on its judgment. The plaintiffs have no interest in that question. Those lands stand fourth in the statu-

tory order of contribution, and it is of no consequence to the plaintiffs, whether the defendant will be able to satisfy her judgment, or not, after their lands shall be sold.

The plaintiffs clearly had no cause of action by reason of anything alleged in their complaint, or proved upon the trial, and their complaint was properly dismissed.

Judgment affirmed, with costs.

[FOURTH DEPARTMENT, GENERAL TERM, at Rochester, September 4, 1871. *Mullin,* P. J., and *Johnson* and *Talcott,* Justices.]